# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 23-60C
(Filed: June 13, 2024)

|  |  |
|---|---|
| **CRISTOBAL RAMOS-QUIROZ** (a/k/a Cristobal Varela), *Plaintiff,* v. **UNITED STATES**, *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) |

*Cristobal Ramos-Quiroz*, La Jolla, CA, pro se.

*Daniel Bertoni*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant.

## OPINION AND ORDER

**BONILLA, Judge**.

    This case bears all the hallmarks of a tortuous law school exam spanning criminal law, immigration law, constitutional law, administrative law, family law, federal courts, appellate practice, torts, and, of course, civil procedure. Dating back to the 1990s, plaintiff Cristobal Ramos-Quiroz has experienced myriad aspects of the American judicial system at the federal, state, and local levels in both the criminal and civil arenas, as well as the executive branch's immigration court system. He navigated these fora with mixed success, at times represented by counsel and intermittently appearing pro se.

    Mr. Ramos-Quiroz is back before this Court seeking monetary damages from the United States based upon a recently discovered twenty-five-year-old error in his initial immigration court proceeding, which set in motion a cascading chain of life-altering consequences. Through this opinion and order, the Court endeavors to comprehensively roadmap Mr. Ramos-Quiroz's journey in hopes that the appropriate court might finally address the substance of Mr. Ramos-Quiroz's current claim.

To be clear, nothing in this opinion should be interpreted as weighing in on the merits or suggesting the appropriate outcome to this litigation. Suffice it to say, on this day–with the current posture of his claim–this Court is not the proper forum to afford Mr. Ramos-Quiroz his day in court. Rather than shut the courthouse doors procedurally or sit idly by while litigation continues where it ought not, this opinion and order seeks to ripen the matter for disposition in the appropriate court whatever the ultimate outcome.

## BACKGROUND[1]

Mr. Ramos-Quiroz was born in Mexico in 1968. Two years later, his parents immigrated to the United States. During his youth, Mr. Ramos-Quiroz was an admitted member of the South Side Watts 13 street gang in Los Angeles, California. After reportedly discontinuing his association with the gang and marrying an American citizen, Mr. Ramos-Quiroz became a lawful permanent resident on March 31, 1988.[2] The couple have four children, all born in the United States.

In early 1994, Mr. Ramos-Quiroz was arrested following a physical altercation with his now ex-wife. On April 14, 1994, he pleaded guilty to one count of domestic battery, in violation of California Penal Code § 273.5(a), and one count of assault with a deadly weapon other than a firearm, in violation of California Penal Code § 245(a)(1). For the commission of these crimes, Mr. Ramos-Quiroz was sentenced to concurrent terms of imprisonment of four years and one year, respectively. He served two years in state prison before being released on probation. Following his release, Mr. Ramos-Quiroz visited his ex-wife and their children with some frequency in violation of the terms of his probation. During one visit, Mr. Ramos-Quiroz's ex-wife called the police, resulting in his arrest and transfer into federal custody. The legacy

---

[1] The background facts are drawn from court filings and decisions in identified proceedings before the United States Department of Justice Executive Office for Immigration Review (EOIR) Immigration Court, the United States District Court for the Eastern District of California, and this Court. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (quoting 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5106, at 505 (1977)), *quoted in Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1417 n.7 (Fed. Cir. 1997).

[2] According to the U.S. Department of Homeland Security website:

> Lawful permanent residents (LPRs), also known as 'green card' holders, are non-citizens who are lawfully authorized to live permanently within the United States. LPRs may accept an offer of employment without special restrictions, own property, receive financial assistance at public colleges and universities, and join the Armed Forces. They also may apply to become U.S. citizens if they meet certain eligibility requirements.

Off. of Homeland Sec. Stat., *Lawful Permanent Residents*, https://perma.cc/7RP9-LP56 (last visited June 13, 2024).

U.S. Immigration and Naturalization Service (INS)[3] commenced removal proceedings under the Immigration and Nationality Act (INA) § 237(a)(2)(A)(iii) (codified at 8 U.S.C. § 1227), based on his aggravated felony conviction (i.e., domestic battery). By order dated February 8, 1999, the EOIR Immigration Court ordered Mr. Ramos-Quiroz's removal to Mexico.[4]

Three years after his removal, Mr. Ramos-Quiroz reentered the United States without authorization.[5] On May 16, 2002, a federal grand jury sitting in the Eastern District of California returned a two-count indictment charging him with illegal reentry–i.e., violating 8 U.S.C. § 1325(a) (Improper Entry by Alien) and 8 U.S.C. § 1326 (Reentry of Removed Aliens). Represented by counsel, Mr. Ramos-Quiroz pleaded guilty to the illegal reentry charge on September 9, 2002. He was sentenced to seventy-seven months in prison, followed by three years of supervised release. Mr. Ramos-Quiroz's efforts to appeal his sentence (i.e., denial of downward departures) to the United States Court of Appeals for the Ninth Circuit and, in turn, the Supreme Court of the United States, were unsuccessful. *See United States v. Ramos-Quiroz*, No. 02-5179 (E.D. Cal. Dec. 2, 2002), *aff'd*, 71 F. App'x 673 (9th Cir. 2003), *cert. denied*, 540 U.S. 1025 (2003). Upon his release from federal custody in 2008, Mr. Ramos-Quiroz was again removed to Mexico.

In 2016, Mr. Ramos-Quiroz reentered the United States without authorization and was promptly arrested and detained by federal officials. At the start of his removal proceedings before the EOIR Immigration Court, Mr. Ramos-Quiroz,

---

[3] In enacting the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2153 (Nov. 25, 2002), Congress disbanded the INS effective March 1, 2003. The agency's mission and responsibilities were transferred from the U.S. Department of Justice to the newly formed U.S. Department of Homeland Security, whereunder three complementary components were created:

- Customs and Border Protection (CBP): prevents drugs, weapons, and terrorists and other inadmissible persons from entering the country.
- Immigration and Customs Enforcement (ICE): enforces criminal and civil laws governing border control, customs, trade, and immigration.
- U.S. Citizenship and Immigration Services (USCIS): oversees lawful immigration to the United States and naturalization of new American citizens.

Dep't of Homeland Sec., *Who Joined DHS*, https://perma.cc/47RY-J6N3 (last visited June 12, 2024).

[4] According to his EOIR Immigration Court testimony, Mr. Ramos-Quiroz had not lived in Mexico since immigrating to the United States at the age of two. He does not speak Spanish with any fluency and his immediate family and close relatives all reside in the United States. Following his removal, Mr. Ramos-Quiroz experienced extended periods of homelessness and unemployment.

[5] Court records indicate Mr. Ramos-Quiroz unlawfully reentered the United States on multiple occasions. In May 2000, for example, he was convicted for possession of a controlled substance (methamphetamine) in violation of California Health and Safety Code § 11377. He was sentenced to sixteen months in prison. Mr. Ramos-Quiroz's prior arrests for drug use and possession date back to 1984. His criminal record also includes arrests for robbery, vehicle theft, identity theft, and an unspecified conviction for failure to appear.

proceeding pro se, filed a motion to reopen and vacate his initial removal case, which served as the basis for his 2002 conviction and imprisonment for illegal reentry. Mr. Ramos-Quiroz asserted that the presiding immigration judge failed to advise him of his eligibility to seek a discretionary removability waiver under the former INA § 212(c).[6] The immigration judge granted the motion to reopen the decades old matter and Mr. Ramos-Quiroz applied for a retroactive discretionary removal waiver under the former INA § 212(c). Mr. Ramos-Quiroz was released from custody but ordered to wear an electronic monitoring device.[7]

Throughout the intervening four years, Mr. Ramos-Quiroz's reopened immigration case experienced at least two venue changes and three judicial reassignments as his electronic monitoring and eventual detention shifted between federal detention facilities. Appearing pro se on at least eight occasions before the EOIR Immigration Court–navigating the evolving nature of his removal proceeding and testifying on his own behalf–Mr. Ramos-Quiroz's INA § 212(c) application was ultimately approved. In a detailed decision and order issued on July 30, 2020, the EOIR Immigration Court effectively vacated the February 8, 1999 removal order. After finding Mr. Ramos-Quiroz statutorily eligible, the immigration judge detailed the bases for the discretionary relief requested and found that Mr. Ramos-Quiroz had "met his burden to demonstrate unusual or outstanding equities warranting a favorable exercise of [the immigrant court's] decision." ECF 1-1 at 10–13.

Armed with the EOIR Immigration Court ruling, Mr. Ramos-Quiroz endeavored to similarly vacate his 2002 conviction and sentence for illegal reentry, predicated on the now-vacated 1999 removal order. Proceeding pro se, Mr. Ramos-Quiroz initially filed a petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He followed up nine days later with a request for a "writ for coram nobis." *See Ramos-Quiroz*, No. 02-5179 (E.D. Cal. July 20 & 29, 2020) (ECF 27 &

---

[6] Relevant here, the former INA § 212(c) allowed certain lawful permanent residents to seek a discretionary removability waiver upon a showing that the applicant: (1) "is a lawful permanent resident"; (2) "has accrued seven consecutive years of lawful unrelinquished domicile in the United States"; (3) is removable as a result of a pre-April 24, 1996 criminal conviction; (4) does not pose a national security, terrorism, or foreign policy threat or engaged in international child abduction; and (5) has not served a term of imprisonment of at least five years for the commission of an aggravated felony. *See* ECF 1-1 at 9. *E.g.*, *Toia v. Fasano*, 334 F.3d 917, 918 (9th Cir. 2003) (describing statutory elements). In enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Congress reduced the eligible prison sentence to one year. *See* IIRIRA § 321(b). Years after Mr. Ramos-Quiroz's removal, the Supreme Court ruled that the IIRIRA could not be retroactively applied. *See I.N.S. v. St. Cyr*, 533 U.S. 289 (2001).

[7] Upon his release, Mr. Ramos-Quiroz served as his mother's caregiver until her death in 2018. He thereafter lived with family members and in transitional housing, volunteering at a local homeless shelter and a foodbank.

30).[8]  Because Mr. Ramos-Quiroz was no longer in federal custody, the district court construed his filings as a petition for a writ of error *coram nobis*, further explaining:

> A writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody and aids those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors. Where the errors are of the most fundamental character, such that the proceeding itself is rendered invalid, the writ of coram nobis permits a court to vacate its judgments.
>
> The Supreme Court has described coram nobis as an extraordinary remedy to be granted only under circumstances compelling such action to achieve justice. A petitioner seeking coram nobis relief must demonstrate: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

*United States v. Ramos-Quiroz*, No. 02-5179, 2021 WL 168318, at *2 (Jan. 19, 2021) (cleaned up).  In favorably evaluating the case under the foregoing factors, and in granting the extraordinary relief requested, the district court noted the government's consent "in the interest of justice."  *Id.* at *2, *4.  By order filed on January 19, 2021, the district court formally vacated Mr. Ramos-Quiroz's 2002 conviction.  *Id.* at *4–5.  As noted at the end of the district court order, Mr. Ramos-Quiroz's belated request for money damages was not properly presented in that action.  *Id.* at *4 n.4.

On March 5, 2021, Mr. Ramos-Quiroz, proceeding pro se, filed a *Bivens* action[9] in the Eastern District of California district court, seeking "[monetary] relief for negligence, negligent infliction of emotional distress, malicious prosecution, and violations of the Fourth, Fifth, Sixth and Fourteenth Amendments [to the United States Constitution] arising out of the investigation which lead to defective underlying deportation proceedings and unlawful deportation to Mexico for eight years."  *See Ramos-Quiroz v. United States*, No. 21-364, 2021 WL 3772007, at *2 (E.D. Cal. Aug. 25, 2021), *report and recommendation adopted*, 2021 WL 4262625 (E.D. Cal. Sept. 20, 2021).  The federal magistrate judge found that Mr. Ramos-Quiroz failed to present a cognizable claim under *Bivens*.  *Id.* at *2–5.  Addressing the potential viability of a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C.

---

[8] Mr. Ramos-Quiroz's post-convictions filings predate the EOIR Immigration Court's July 30, 2020 operative ruling by a matter of days.  Review of his petition reveals the immigration judge telegraphed his forthcoming ruling during the June 25, 2020 final hearing.

[9] *See generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

§ 2679, the magistrate judge highlighted the limitations on the government's waiver of sovereign immunity regarding removal proceedings. *See Ramos-Quiroz*, 2021 WL 3772007, at *6–7 (citing 8 U.S.C. § 1252(g)). Further, the magistrate judge noted Mr. Ramos-Quiroz's apparent failure to first exhaust his administrative remedies. *Id.* at *7–8 (citing 28 U.S.C. § 2675(a)). Following the adoption of magistrate judge's findings and recommendation by the district court judge, the case was dismissed on September 20, 2021. *See Ramos-Quiroz*, 2021 WL 4262625, at *1.

On January 13, 2023, Mr. Ramos-Quiroz turned to this Court, seeking relief for unjust conviction and imprisonment under to 28 U.S.C. §§ 1495 and 2513.[10] ECF 1. Before the government even responded to the complaint, the parties filed a joint stipulation of dismissal without prejudice to allow Mr. Ramos-Quiroz to seek the jurisdictionally required certificate of innocence. ECF 12. As recently iterated by this Court: "'[I]n order for this court to have jurisdiction, a plaintiff must obtain a certificate of innocence from the district court which states that not only was he not guilty of the crime of conviction, but also that none of his acts related to the charged crime were other crimes.'" *Ash v. United States*, 170 Fed. Cl. 761, 770 (2024) (quoting *Abu-Shawish v. United States*, 120 Fed. Cl. 812, 813 (2015); *Carpenter v. United States*, 118 Fed. Cl. 712, 713 (2014)); *e.g.*, *Brewer v. United States*, No. 21-1872, 2023 WL 2233717, at *2 (Fed. Cir. Feb. 27, 2023).

Over a year later, on May 13, 2024, Mr. Ramos-Quiroz, appearing pro se, filed a "notice of appeal" to the United States Court of Appeals for the Federal Circuit. *See Ramos-Quiroz v. United States*, No. 24-1851 (Fed. Cir. May 22, 2024) (ECF 13). Referenced in and appended to his filing is a November 16, 2023 letter from ICE addressed to Mr. Ramos-Quiroz's former attorney denying a December 13, 2022 FTCA claim, reportedly alleging "[he was] wrongfully deported based on a wrongful conviction." ECF 13 at 2. Critically, the ICE letter closes with the following notice: "If you disagree with this determination, you may file suit in an appropriate United States district court not later than six (6) months after the date of mailing of this notification. 28 U.S.C. § 2401(b)." ECF 13 at 2. The six-month jurisdictional deadline expired on May 16, 2024, three days after Mr. Ramos-Quiroz's filing in this Court.

On May 22 and 24, 2024, the Clerk's Office received two additional documents from Mr. Ramos-Quiroz: an application to proceed *in forma pauperis* and a motion for an enlargement of time. In support of his request for additional time to prepare his case, Mr. Ramos-Quiroz explains his former attorney only recently notified him of ICE's FTCA decision.[11] Mr. Ramos-Quiroz further represents that his former counsel

---

[10] Mr. Ramos-Quiroz commenced this action pro se, noting his designated attorney was awaiting admission to practice before this Court. ECF 1-2. The Court granted plaintiff's motion for leave to proceed *in forma pauperis* (ECF 2) on January 24, 2023. ECF 6.

[11] In his May 22, 2024 motion, Mr. Ramos-Quiroz further represents that his former lawyer did not keep him abreast of the prior proceedings before this Court.

has been in ill health and can no longer represent him in this matter. The May 22 and 24, 2024 submissions were forwarded to the undersigned for adjudication and to determine, in the first instance, whether they were properly submitted to this Court or should be referred to the Federal Circuit in light of the docketed appeal.

## DISCUSSION

Reviewing Mr. Ramos-Quiroz's recent filings in the context of his thirty-year engagement with the judicial system makes a few things clear. First, his May 13, 2024 filing in this Court was improvidently filed and transmitted as a notice of appeal to the Federal Circuit. Notwithstanding the pre-printed title on the form ("NOTICE OF APPEAL") and statement that the filer "hereby appeal[s] to the United States Court of Appeals for the Federal Circuit," Mr. Ramos-Quiroz handwritten references to the basis of his appeal are the "FTCA 28 USC 1346, 2671–2680 entered in this action on 11-16-2023" (i.e., date of the ICE letter).[12] ECF 13 at 1. As noted *supra*, Mr. Ramos-Quiroz attached a copy of the November 16, 2023 ICE letter to his May 13, 2024 filing. *Id.* at 2.

Further, the original complaint filed in this Court on January 13, 2023, sought money damages for unjust conviction and imprisonment under to 28 U.S.C. §§ 1495 and 2513. ECF 1. Shortly thereafter, the complaint was voluntarily dismissed without prejudice to afford Mr. Ramos-Quiroz the opportunity to seek the necessary certificate of innocence. ECF 12. In contrast, Mr. Ramos-Quiroz's 2021 FTCA claim was dismissed by the Eastern District of California district court for, *inter alia*, failure to exhaust his administrative remedies as required under 28 U.S.C. § 2675(a). The November 16, 2023 ICE letter is presumably answering the mail for that collateral case, rather than addressing the jurisdictional defect in this one.

Based on the foregoing, the undersigned finds Mr. Ramos-Quiroz intended to comply with the instructions included in the November 16, 2023 ICE letter and challenge the agency's denial of his FTCA claim by filing suit in the "appropriate United States district court." *See Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) ("[P]ro se pleadings are to be liberally construed."). Although this Court is not authorized to withdraw the notice of appeal transmitted to and docketed in the Federal Circuit, there are procedural steps the undersigned can–and must–take to right this ship. This is particularly important given that the statute of limitations for Mr. Ramos-Quiroz to file an FTCA suit has now expired.

---

[12] Similar references are included in the certificate of service. *See* ECF 13 at 3.

For these reasons, the Clerk of Court is directed to take the following actions:

- Transmit a copy of this opinion and order to the Federal Circuit for the appellate court's consideration of whether *Ramos-Quiroz v. United States*, No. 24-1851 (Fed. Cir.), was improvidently docketed on May 22, 2024.

- File Mr. Ramos-Quiroz's May 13, 2024 filing (ECF 13) as a new case *nunc pro tunc*, reflecting a May 13, 2024 filing date, and assign the directly related case to the undersigned as contemplated under Rule 40.2(a)(4)(A) of the Rules of the United States Court of Federal Claims (RCFC).

- File Mr. Ramos-Quiroz's May 22 and 24, 2024 application to proceed *in forma pauperis* and motion for an enlargement of time in the new case.

- File this Opinion and Order in the new case, consistent with the directives below.

The reason for these unorthodox actions is simple: Mr. Ramos-Quiroz's improvidently docketed and transmitted notice of appeal does not relate to the action originally filed (and voluntarily dismissed) in this Court and is clearly untimely. *Compare* ECF 12 (April 10, 2023 stipulation of dismissal) *and* ECF 13 (May 13, 2024 notice of appeal), *with Langan v. United States*, 833 F. App'x 341, 342 (Fed. Cir. 2021) (per curiam) ("Rule 4 of the Federal Rules of Appellate Procedure provides that when the United States is a party to a case, a notice of appeal must be filed 'within 60 days after entry of the judgment or order appealed from.'") (citing Fed. R. App. P. 4(a)(1)(B)(i)). Continuing along the current appellate path will likely foreclose Mr. Ramos-Quiroz's opportunity to pursue judicial recourse under the FTCA.[13]

All that said, this Court is not the appropriate forum to hear the FTCA suit.[14] *See Rojas-Vega v. United States*, 782 F. App'x 994, 996 (Fed. Cir. 2019) ("[T]he Court of Federal Claims did not have jurisdiction over [plaintiff's] FTCA claims because, by the plain language of the Tucker Act, the Court of Federal Claims does not have jurisdiction over torts.") (citing 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . not sounding in tort.")) (additional citations omitted). But, for the reasons already stated, dismissal for lack of subject matter jurisdiction is not a judicious option.

---

[13] A search of the federal judiciary's case management/electronic case filing database (CM/ECF) in the Public Access to Court Electronic Records (PACER) does not reflect Mr. Ramos-Quiroz filing a separate appeal of the November 16, 2023 ICE denial of his FTCA claim in any United States district court.

[14] Before turning to the jurisdictional issues presented in the new matter, the Court grants Mr. Ramos-Quiroz's May 24, 2024 renewed application to proceed *in forma pauperis* as he has made the requisite showing under 28 U.S.C. § 1915.

Rather than dismiss this action pursuant to RCFC 12(h)(3),[15] the Court must consider whether transfer to a court with jurisdiction is in the interest of justice. Title 28, United States Code, Section 1631, provides:

> Whenever a civil action is filed in [this] court . . . and [this] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . .

28 U.S.C. § 1631. "Transfer under this section is appropriate when (1) the transferring court lacks jurisdiction, (2) jurisdiction lies in another court, and (3) transfer is in the interest of justice." *Martin v. United States*, 169 Fed. Cl. 342, 345 (2024) (citing *Zoltek v. United States*, 672 F.3d 1309, 1314 (Fed. Cir. 2012)). Regarding the first element, as already explained, this Court lacks jurisdiction to entertain Mr. Ramos-Quiroz's FTCA suit.

Evaluating the second element, jurisdiction for tort claims under the FTCA may be prosecuted "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). This case presents three options, all in California: (1) Mr. Ramos-Quiroz resides in the Southern District of California; (2) the 1999 removal proceedings took place in the Central District of California[16]; and (3) Mr. Ramos-Quiroz's now-vacated 2002 conviction was prosecuted in the Eastern District of California. Among these venue choices, the United States District Court for the Eastern District of California serves the interest of judicial economy. As noted above, the Eastern District of California most recently adjudicated Mr. Ramos-Quiroz's *Bivens* action and addressed his previous failure to exhaust his administrative remedies to present a ripe FTCA claim.

Regarding the timeliness of Mr. Ramos-Quiroz's FTCA claim:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless [the] action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

---

[15] RCFC 12(h)(3) provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.*; *see, e.g.*, *Donnelly v. United States*, No. 23-1651, 2023 WL 6889032, at *1 (Fed. Cir. Oct. 19, 2023) (per curiam).

[16] The EOIR Immigration Court proceedings took place in the now-shuttered San Pedro Immigration Court, formerly located in a suburb of Los Angeles, California.

28 U.S.C. § 2401(b).  The record presented is not clear as to the precise accrual date of Mr. Ramos-Quiroz's FTCA claim and whether he, presumably through his former attorney, properly presented it to the appropriate federal agency within two years of that accrual date.  Those issues–including the potential application of equitable tolling–are left for the transferee court to determine.  *See Johnson v. United States*, No. 23-55210, 2024 WL 2559255, at *1 (9th Cir. May 24, 2024); *accord Harrow v. Dep't of Def.*, 601 U.S. __, 144 S. Ct. 1178, 1183 (2024) (discussing non-jurisdictional nature of the "time limit" for filing tort claims codified in § 2401(b)).  In treating Mr. Ramos-Quiroz's May 13, 2024 "notice of appeal" filed in this Court as a timely FTCA claim, albeit in the wrong court, at least one procedural roadblock is removed.

The Court notes that Mr. Ramos-Quiroz's FTCA claim may face additional jurisdictional challenges stemming from 8 U.S.C. § 1252(g).[17]  In the August 25, 2021 report and recommendation issued in the *Bivens* suit, the magistrate judge stated § 1252(g) "shields Plaintiff's claims from judicial review."  *Quiroz*, 2021 WL 3772007, at *7.  However, the magistrate judge also noted that "the provision does not encompass the universe of all possible acts and events arising from removal proceedings."  *Id.* (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).  Despite this Court's reservations on Mr. Ramos-Quiroz's claim, we leave the jurisdictional question of whatever amended complaint he ultimately files to the appropriate forum (i.e., the Eastern District of California).  This is so, in part, because this Court is not privy to the FTCA administrative claim Mr. Ramos-Quiroz submitted prompting the November 16, 2023 ICE letter.

Turning to the third and final element, the Court finds that transferring this case would serve the interest of justice.  As this Court recently explained:

> "The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987) (citing *Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1055 (Fed. Cir. 1985)). The decision to transfer "rests within the sound discretion of the transferor court, and the court may decline to transfer the case '[i]f such transfer would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Spencer v. United States*, 98 Fed. Cl. 349, 359 (2011) (quoting *Faulkner v. United States*, 43 Fed. Cl. 54, 56 (1999)).

*Martin*, 169 Fed. Cl. at 345–46 (citation omitted).  Construed liberally, as this Court must at this stage of proceedings, there is no basis upon which to conclusively decide

---

[17] Section 1252(g) states in pertinent part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

that Mr. Ramos-Quiroz's FTCA claim is futile or frivolous.[18]  *See, e.g.*, *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018) (retaining jurisdiction over plaintiff's FTCA claims stemming from an unlawful removal despite § 1252(g)); *Sims v. United States*, No. 07-2082, 2008 WL 4813827, at *3 (E.D. Cal. Oct. 29, 2008) (finding that venue in the Eastern District is appropriate for a FTCA claim when "[plaintiff] alleges that he was detained at all pertinent times in the Eastern District"); *Reno*, 525 U.S. at 482 (applying a "narrow" reading to § 1252(g)).  It would be highly inappropriate for this Court to opine upon the merits of Mr. Ramos-Quiroz's seemingly novel FTCA claim predicated on a successful petition of a writ of error *coram nobis*.  In transferring this matter, this Court simply concludes that the Eastern District of California is vested with that role.[19]

## CONCLUSION

For the reasons set forth above:

(1) The Clerk of Court is directed to:

   a. **REVISE** the CM/ECF docket in this matter by updating the case caption to reflect the plaintiff as: Cristobal Ramos-Quiroz (a/k/a Cristobal Varela);

   b. **TRANSMIT** a copy of this opinion and order to the Federal Circuit for the appellate court's consideration whether *Ramos-Quiroz v. United States*, No. 24-1851 (Fed. Cir.), was improvidently docketed on May 22, 2024;

   c. **FILE** Mr. Ramos-Quiroz's May 13, 2024 filing (ECF 13) as a new (directly related) case *nunc pro tunc*, reflecting a May 13, 2024 filing date;

   d. The CM/ECF docket in the newly docketed case shall **REFLECT** the plaintiff as: Cristobal Ramos-Quiroz (a/k/a Cristobal Varela);

   e. **ASSIGN** the newly docketed directly related case to the undersigned as contemplated under RCFC 40.2(a)(4)(A);

---

[18] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se complaints must be held "to less stringent standards than formal pleadings drafted by lawyers").

[19] The foregoing rulings render moot Mr. Ramos-Quiroz's May 22, 2024 motion for an enlargement of time.  Once the case is transferred, and litigation begins anew in federal district court, he may seek additional time for specific filings from that court.

    f. **FILE** Mr. Ramos-Quiroz's May 22, 2024 motion for an enlargement of time in the newly docketed case;

    g. **FILE** Mr. Ramos-Quiroz's May 24, 2024 application to proceed *in forma pauperis* in the newly docketed case; and

    h. **FILE** this Opinion and Order in the newly docketed case.

(2) All future filings shall **REFLECT** the updated case caption;

(3) Mr. Ramos-Quiroz's May 24, 2024 application to proceed *in forma pauperis* is **GRANTED**;

(4) Mr. Ramos-Quiroz's May 22, 2024 motion for an enlargement of time is **DENIED** as **MOOT**; and

(5) The Clerk of Court is directed to **TRANSFER** the newly docketed case to the United States District Court for the Eastern District of California in accordance with 28 U.S.C. § 1631.

  It is so **ORDERED**.

                                                                   Armando O. Bonilla
                                                                   Judge